argument today is United States v. Snake. Appeal number 24-2400. Mr. Giesfeld, this is my case as well. Whenever you're ready. May it please the court. My name is Matthew Giesfeld and I represent Mr. Roger Snake. The district court carefully explained why it would not sentence Snake to home confinement, but it didn't specifically explain why it imposed a statutory maximum sentence that was nearly three times the upper end of the guidelines range. The court did not provide the required heightened explanation for this significant upward departure and in doing so, the sentence lacked the perception of fair sentencing, a basis for sufficient appellate review, and the assurance that the court avoided unwanted sentencing disparities. And for this procedural error, Snake asked to be re-sentenced. Briefly to recall your honors, Roger Snake was revoked from supervised release and the guidelines called for a three to nine month revocation sentence. The guidelines also said that given the type of violation and given the underlying offense, that that sentence may be served on home confinement. And Snake asked the court to follow the guidelines. He asked for three to nine months, he asked for the three to nine months that the guidelines advised and he asked for these months to be served on home confinement. And the sentencing court took issue with the latter. It said allowing him to go back home makes no sense to the court. And throughout the transcript, your honors, the issue of home confinement bookended the court's description and back and forth with the defense. The court started by rejecting the idea of home confinement and it ended with rejecting the idea of home reasoning for why home confinement would not be the sentence that it would impose. But when it came to the length of the sentence, the courts simply stated in mostly a conclusory fashion, the legal standards that apply to sentencing. The court said that if the intent of its sentence was to hold the defendant accountable for his violations, protect the community, and engage in both specific and general deterrence. The only time the court mentioned the length of incarceration was when the court actually imposed it. There are heightened requirements for a significant upward, the explanation of a significant upward departure from the guidelines. There must be a statement of reasons for the particular sentence, that's from Baker. The court must explain why it's appropriate for the particular defendant in the case, that's from Jones. And from the United States. Would you agree that the revocation guidelines are sort of the mildest ones in the guideline system and that our review is most deferential for those? It is most deferential for those, your honor, you're right. However, this court still doesn't give the deference to the sentencing court when a procedural error exists. When, I don't know, I'm going back a few years on this, but when we saw a lot of appeals of sentences make arguing so-called Cunningham errors, arguing that the district judge did not respond sufficiently to principle arguments in mitigation. This court responded to a flood of those appeals by encouraging district judges to ask defense counsel at the end of a hearing, in essence, have I sufficiently addressed your arguments or should I say more? Did that exchange, kind of exchange, happen in this hearing? As I left my binder over there, I don't recall specifically if that occurred. The transcript would reflect that, your honor, and I apologize for not having that at the tip of my tongue. The court, though, the more dispositive factor, your honor, would be that the court just leaned into the the sentencing the length of time. It just stated the conclusory reasons. Is it your position that the judge first has to say, I'm going to give you a sentence above the policy guideline recommendations and here's why, as opposed to the judge saying, here are the reasons for my sentence. I don't think I've ever been in front of a district judge. I think every district judge I've ever been in front of, they say, here are the reasons for my sentence and the sentence is X. They don't say the sentence is X. Here are the reasons for my sentence. The sentence is X. Absolutely, your honor, and Snake is not suggesting that there needs to be some magic word. Well, what do you make of these comments? That he was one of the most dangerous sex offenders to children. He was intelligent enough to hide their predatory actions. I mean, what about all the, these are pretty damning statements by the district judge leading up to the two years. Absolutely, your honor, and to that I'd respond with two points. First being, again, that the sentencing transcript reveals that his reasons were booked ended by the topic of home confinement. That's what he was talking about. He said, I'm rejecting home confinement. Here's all these reasons and back and forth, and then he ended with, I'm rejecting home confinement. So he had to repeat them? Is that your point? He had to then repeat the same things that he had just said in announcing a two year sentence? No, your honor, but he needed to give something, some explanation to let us know as parties and for you as a court to know exactly what was his explanation for it. Those factors may have been repeated absolutely, and maybe he could have said something like, for all these other reasons, here's why a longer sentence is appropriate. I don't think that that would necessarily meet the heightened explanation requirement, but it would at least take away the ambiguity. Do you have a case that tells us that, yes, we have the cases that review is very differential on these revocation sentences, but we also have Gaul and all its progeny saying a court has to explain its sentence, and the greater the departure, the greater the variance, the greater the explanation. Is there a case that marries those two standards and requirements that would tell us what the answer is here? Yes, your honor, I believe Lockwood is a revocation sentence. I cited that in my opening brief. And in Lockwood, the court, this court, I believe, said at the end, the allusion to the obvious fails to prove the compelling justification Gaul deems necessary to impose an above guideline sentence of nearly three times the high end of the guidelines range. And that's exactly what we had here, your honor. Yes, the sentencing guidelines, I think, to Judge Hamilton's point, maybe the revocation guidelines are milder, but they still contemplate the exact type of violations and underlying offenses that Snake had. It contemplates the type of defendant that he was, and it called for a three to nine month range. And so to give him the statutory maximum, the court was saying that he's essentially the 99th percentile, that there is no more serious of an offender under these circumstances, so I'm giving the statutory max, and he didn't say why. And with that, unless there's any immediate questions, I would yield the rest of my, or reserve the rest of my time for rebuttal. Okay, Mr. Stephen. May it please the court. Good morning. My name is Corey Stephan, and I represent the United States in this matter. The district court here adequately explained its sentence in this case. It did not procedurally err, and the sentence is not plainly unreasonable. The district court considered the advisory sentencing guideline range, had a lengthy discussion with the defendant about the court's concerns about the defendant's behavior in this case. The district court adequately explained its reasons for the upward departure throughout the record as a whole, and in the summary in the end, at the end of the transcript, and the district court also stated reasons for that upward departure, citing 3553 factors, which we know are not required to be addressed in checklist form, but which the district court did address in its comments, and certainly some of the 3553 factors. So the district court only has to say something about the guideline range and the sentencing factors, and here the district court found the guideline range of three to nine months, asked if there were any objections, and there were none. And the record here as a whole is a thorough explanation of the district court's concerns with the defendant, specifically his behavior. Let me ask you a question about your say something argument, because that language is from Martin, I believe, or it's, if it's not Martin, it's still a case about the judge's failure to consider the guideline range. In that particular case, you know, the judge did not consider the guideline range, and then also didn't mention it, so the appellate court, we said, we don't even know, the judge has got to say something so that we know, the judge knows what the guideline range is. But that doesn't appear to be Mr. Snake's argument here. His argument is, we've got a line of cases that also say you have to adequately explain the jump. And so, what I'm asking you is, if you take away that say something line of cases, because that's about a different problem, what are we left here with? And I guess it's a version of the same question I asked Mr. Giesfeld. Are you, is it your argument that, since review of these revocation sentences is so differential, we leave to one side all the line of cases, starting from Gaul, that tell us a judge does have to explain, and if there's a jump, the greater the jump, the more the judge has to explain why the jump. I agree that there has to be a greater explanation for the greater jump, and I think that's consistent with the case law. You're correct, Your Honor, about Martin, that was a failure to calculate the guideline, and the district court failed to comply with that particular requirement. And that's not what we're getting at here. I think the recognition of the guidelines is kind of a building block that gets us to the explanation. So, I won't belabor that as one of the building blocks, but what you're really getting to, I think, Your Honor, is what did the defendant say, or what did the district court say, that really addressed the why? And why was this a case where the district court felt there was a need to go above the sentencing guideline range? And I want to respond to what Mr. Giesfeld said. I think the district court took issue with much more than just the home confinement in this case. I think the central focus of the transcript here was the district court not only trying to make a record for appellate review, but also trying to get Mr. Snake to understand why the court was going to do what he did. The district court was talking directly to Mr. Snake, and I think the judge finalized and said, I hope you understand, and I hope this gets you to change your conduct, because I don't believe you. Actions speak louder than words, and you can sit here today and say that you now understand. But I gave you a warning. He's a child sex offender, right? I gave you a warning not to have contact with minors, and that was one of your conditions to supervise release. You violated it. We brought you into court, at least on a telephonic, and I gave you a verbal warning, and you didn't take heed. Do we have any information on where the judge gets 24 from? The number 24, Your Honor? Mm-hmm. No, we all know it's the stat max here.  But do we have any information in this record, in this transcript, on where the judge gets 24 from? No, I don't think the judge, and in my experience, judges oftentimes don't weigh, you know, it could be 16 or it could be 18. I think the judge just thought based upon the egregiousness of the conduct, and I will note that the judge said at least three times, on my count, three times in the transcript he called the defendant's behavior egregious. And I know you mentioned, Your Honor, the words about the most dangerous sex offenders. Really, he's talking about predators who are grooming children and using leadership roles to have access to children, not telling the children's parents that you are a child sex offender who is taking care of their kids. That is a consistent theme throughout the… Right. Is there any place in the transcript where the judge acknowledged what he was doing was way above the guideline? I think the summary at the end, I think, kind of brings it together, where the judge says, I am persuaded that a sentence above the advisory guideline sentencing range is reasonable and no greater than necessary. Of course, we're talking about the maximum to achieve the statutory purposes of sentencing upon revocation. The judge said, my intent, the intent of my sentence is to hold the defendant accountable for his violations, protect the community, and specifically minors, as well as to promote specific and general deterrence. And those… I hear you. Could you address the Lockwood case, which was highlighted in the opening brief but not mentioned in yours? Yes. And it feels a lot like this one. The Lockwood case is a case where the district court focused almost exclusively on the defendant's criminal history. And this court found that the lack of record in the district court, considering the defendant's mitigation arguments, which I think the district court forgot until the defendant mentioned it, left this circuit unable to meaningfully review the sentence. So it was really where the district court focused on criminal history, you know, like criminal history points. Well, no. I'm going to the passage on 781 in that opinion, where the district court imposed a sentence nearly three times the high end of the guideline sentencing range, and this is at 781 in Volume 789 of F-3rd, and the point was not that the higher sentence could not be justified. It was that the district judge did not specifically address, why am I going nearly three times the top of the guideline range? And I think the defense argument is, and I hope I'm not getting this wrong, was that the court failed to offer a compelling justification, but it's more of an explanation. Exactly. That's the argument here. And in this case, I think the judge did. I think the judge clearly talked about the 3553 factors, what he was trying to do, hold the defendant accountable. Why? To punish him. It's a 3553 factor. Protect the community, specifically minors from a child, sexual offenders who's having repeated contact with minors in violation of the supervised release conditions. That is protecting the community. Specific and general deterrence, getting a message through the defendant. And the judge actually, at the end again, said, I hope this gets a message through to you that your actions are not acceptable. So the government's position is that the record as a whole adequately supports and addresses the sentence in this case, as well as the upward departure, including the amount of upward departure. So for those reasons, unless there are further questions, we would stand on our brief and ask that you affirm the sentence. Could I ask you about your quotation of the Martin case at page 12 of your brief? Yes. The one where we neglected a string citation? I don't know what your explanation is, but the quotation is not from Martin? That's correct. We acknowledge that and apologize. I hadn't heard that before. It came up in the reply brief, and I hadn't heard anything mentioned of it until you were ready to sit down. I apologize, Your Honor. All right. Thank you, Mr. Stafford. Mr. Geisfeld. Thank you, Your Honors. Judge Hamilton, first, the court did not ask if all of the main sentencing arguments were addressed. I just checked the transcript. Oh, if the explanation was sufficient. Correct, yes. The government came here today, Your Honors, and said, I think the central focus of the sentencing was, and then gave its explanations. The question is not whether a sentence could be explained. The question is, was it? We don't scour the record. We do for other factors. Did you consider the sentencing factors? That's okay. But here, we needed an explanation. And in the comparatory cases that the defense put forward in the original brief, Lockwood, Snyder, Castro-Juarez, all of them had instances in which the sentencing court did address some information, did address some record, put forth some reasoning as to why a particular sentence might be appropriate. But all of them were examples where, ultimately, at the end of the day, the sentencing explanation was insufficient under Gaul. The government says that the word egregious comes up several times in the sentencing transcript. The government's right on that. But we don't know what this district court was applying its egregiousness descriptor to. How could that possibly be the case? Are you suggesting that the judge has to say, I'm sentencing the defendant 24 months because this? I'm sentencing the defendant 24 months because of this? No, we're not suggesting that there is a magic words argument, Your Honor. Like public corruption cases, the judge talks about evil of public corruption. And then at the end, the judge says the sentence is 60 months in prison. Does the judge then have to say 60 months in prison because, you know, I start, and then I say 60 months, and then I got to say it again? Absolutely not. I would just point to, as I mentioned in my opening argument, the actual transcript reveals that the topic that the court was referring to was home confinement. It bookended the discussion, and it wasn't until there was no change of direction from which this court could find or even infer what specifically was the court's reasoning. Thank you very much. Thank you, Mr. Giesfeldt. Thank you, Mr. Stefan. We'll take case under advisement, and the court will be in recess. Thank you.